Judges of the United States Court of Appeals for the Fourth Circuit. Thank you. We have Ms. Platt. Can you hear me? Yes, sir. And Ms. Young, can you hear me? I can, Your Honor. Thank you. Okay, we'll take up the final case we're hearing today, U.S. v. Pulley. And Ms. Platt, why don't you begin? Thank you, Your Honor. Good afternoon, and may it please the Court. I'm Caroline Platt on here on behalf of Craig Pulley. The District Court erred when it denied the motion to suppress under Franks v. Delaware because the police detective in this case made false statements and omitted materially important information about informant credibility in reckless disregard of whether the magistrate would be misled. This case is indistinguishable from this Court's opinion in United States v. Lull from 2016. The role of Lull and other cases is that when a police officer uses information in a warrant affidavit from a source that the police officer knows has lied to the police and particularly about the crime being investigated and about which that's the subject of the warrant, it is reckless omission under Franks and Lull as a matter of law not to advise the magistrate of that informant's credibility problems. This is a quote from Lull at page 118. When the information forming the basis for the informant's veracity and reliability are critical to the totality of the circumstances test. That's Lull quoting this Court's decision in Wilhelm, which itself is quoting Illinois v. Gates. Because this case is indistinguishable from Lull, the District Court's denial of Mr. Pulley's motion to suppress was error, and we would ask this Court to reverse. So as to the intentionality prong of the Franks test, we submit that Detective Howard's affidavit was recklessly misleading to the magistrate because she omitted several pieces of information that directly bared on witness Daryl Blunt's credibility. Counsel, can I ask you, when you say recklessly, does recklessly require that the affiant, or I'm sorry, the officer in this case, the affiant advert to the risk? Is it a personal knowledge requirement? That is, must she recognize to herself by omitting this, I'm likely to miss, it's possible I will mislead the magistrate? No, Your Honor, I do not think that there is a personal... So it's gross negligence, not recklessness? I'm not sure I understand your question. It's not a gross negligence standard. It's a recklessness standard. But I'm not sure I understand Your Honor's question. She does not, I mean, it's not an intentional standard. It's the circumstances of this case... Intentionally mislead means I know this will be misleading, and I'm going to do it. I want to mislead the person. Recklessness means I'm aware this may mislead the magistrate, but I'm going to run the risk that it might. I'm not sure that I agree that that's what recklessness means. I agree with your, yeah, I don't know that I agree that that's what recklessness means. I agree with your definition of intentionality, and that's not the intentional intentionality. It's complicated, as I think Your Honor is getting to, because the prong of Frank's is called intentionality, but it is intention and recklessness as a matter of law. We ordinarily say recklessness requires that the person advert to and choose to run the risk, right, if that's an element. The question is, in this circumstance, is it different? Is it a different kind of recklessness? Does it require gross negligence is sufficient to meet recklessness, or is it something else? So Your Honor, if you're referring to tort law, that's not what the Frank's cases that I've read from the Fourth Circuit discuss. And so what I would say is that the type of recklessness that a police officer in Lull was found to have encompassed is exactly the kind of recklessness that Detective Howard in this case encompassed, which is to say Yeah, but it seems like in this case, the circumstances seem to be significantly different. The district judge spent a lot of time on this. He was very careful. He heard a lot from the detective, Detective Howard. And it turns out that Detective Howard put in the statement that Blunt provided information found to be credible. And that is a true statement, because he found out, he revealed the location of the clothes, and he revealed the location of the gun, both of which proved to be accurate. So Your Honor, just a minute, let me finish. She's her intent was to indicate that that testimony, which she revealed about the clothes and the gun was accurate. Now, she did not put in the fact that Blunt had told a different story when he first started talking to her, which would go to his overall credibility. But she did reveal that the evidence he provided on which she was relying was accurate. And that in fact, was true. And so this court went through this in at quite some length, the whole methodology, the whole efforts of Detective Howard to put this case together as a complex set of cross facts. Here's the problem, Your Honor, is that just a minute, can I finish, please? And she revealed all this to the district judge, and the judge found that there was no intent to mislead. That was a finding he made. We're not alleging intent. Again, we're alleging recklessness. And her recklessness, again, is identical to the recklessness of Investigator Welch in law. If you look at pages 116 to 118 of the law decision, this case is directly on all fours and controlled by law. Except the credibility of the informant was at issue there. The whole statement, she made a statement that the information provided was credible. In other words, she could have just said the information was accurate. That's what she was saying. Miss Plank, can I interrupt for just one second? I think it, and perhaps it would help your argument if you would tell us what she intentionally or what she recklessly withheld. It seems to me that she knew that Blunt had committed the robberies. She knew he was in the pharmacy during the third robbery. She knew that he had lied about the purple gun in the holding cell when the gun was identified by another detainee. Tell us what else factually you're relying on. She knew that, that the defendant was incarcerated during robberies one and two. She didn't give any, so, and Blunt said that he had, that the defendant had participated in all these robberies. So, she knew that Blunt was lying about at least these three things. Were there other things in the record that she knew Blunt was lying about that you could bring to our attention? Right. So, thank you, Judge Keenan. That's sort of, that's several of the things I was, that I was about to say. And this is why the recklessness intent of Judge, I'm sorry, of Detective Howard is exactly like, or perhaps worse than that of Investigator Welch and Lull, is because in these facts and other facts that I will, that I will bring up, Judge Keenan, she usurped the role of the magistrate. So, she's, she's co-opting the structure of the criminal justice system by, and it's the four quotes from Lull in pages, again, 116 to 118. She is determining which parts of Blunt's statements are credible and non-credible, which is under Lull and Franks and Gates, the role of the magistrate to do, to determine which parts of the statements are credible and non-credible. And so, this is a quote from Lull, deeming the informant reliable for some purposes, but unreliable for others is an assessment that is for the magistrate, not Investigator Welch, to make. That's a quote from Lull at page 116. And so, Judge Keenan, as you say, particularly the hiding of the purple gun in the holding cell that Daryl Blunt did, and then he lied to the police officers and denied that he did that, even though they had him doing it on video, is worse than the informant in Lull pocketing the $20 of buy money, because the gun was used in the robbery. And so, it is inherent in the robbery transaction, even more so than the $20 of buy money in Lull. And that's why this case is controlled by Lull. Much of stealing the buy money made the informant in Lull unreliable and something that the magistrate should have been able to consider in considering the informant's reliability. Daryl Blunt lied to the police about hiding the gun used in the robbery in the holding cell at the jail during his interrogation by the police and lied to the police about that. And so, Detective Howard usurped the role of the magistrate judge by not allowing the magistrate to consider that as part of his credibility determination. So, it was the lying to the police about the gun. He lied to the police about who hid the clothing at the motorcycle club, which the police knew. He also, I'm sorry, there were lies and omissions. So, is it clear that she lied about that? The record doesn't suggest she lied. The record suggests she was hearing information. She fixed her file later and the later file is inconsistent, but it doesn't suggest she knew that that was the case at the time or that she lied about it. Well, it's clear that she withheld the information. So, lie is a strong word. You're right, Your Honor. And it's not clear she withheld it either, that she had to have known it at the time. And that's not clear that that was the evidence that came to her from the detective who was monitoring the phone call. The detective who monitors the phone call, Your Honor, I have the citation and I can definitely get it for you by the time of my rebuttal. He testified at the very end of day one of the suppression hearing and he said for sure that the item about the clothing that he definitely wrote it down. He definitely put it in the tray and he definitely said it out outside and out loud. And she testified at the hearing. And again, I'll be happy to get the citation for you certainly by the time of my rebuttal. And she said that she definitely more knew about the gun as well. That's hiding, finding a gun in the holding cell is certainly a major incident at the thing. She said she more likely than not knew about the gun as it happened. They also talked about the clothing part. Yeah. So, I can find the test. I think his name's not Blauvelt. His name's supposed to be that. He testified at the very end of the first day of suppression hearing that he made that known to the entire team. And the other thing is that as the district court noted under United States versus Blauvelt, the collective knowledge doctrine as long as it's the investigative team, it's not every law enforcement officer in Norfolk, but as long as the investigative team knows under United States versus Blauvelt, that is sufficient for a misleading warrant affidavit. And these officers are all part of the investigative team in this case. Ms. Platt, I've got a follow-up question. Judge Davis, as Judge Niemeyer observed, does a very thorough job. But I think he left one gap here and that is he made a finding on but he only addressed reckless disregard with regard to the single issue of whether the defendant was in jail during the first two robberies. He said that the police officer, Officer Howard, did not act with reckless disregard in omitting that fact. But I don't see anywhere in the record that Judge Davis ruled with regard to reckless disregard as to the other items. Is there anything in the judge's ruling that addresses reckless disregard other than the information regarding the defendant's incarceration during the first two robberies? I agree with that analysis, Judge Keenan, and I think that's how I present it in my blueprints. Okay. Where does that leave us? Yeah. Where does that leave us then? It looks like the judge didn't do part of the job. Do we send it back to him? I think not. And so I've been thinking about this question because I'm sort of a structured analysis type person as well. And I think the court in Lull itself found reckless disregard, I think particularly because it's not a finding of intent to get back to the sort of tort law. The court in Lull itself, this court in Lull, decided that the officer had acted with reckless disregard as a matter of law. And I think this court can do that as well because it's sort of a mixed question of law and fact. Yeah. How do we do that? It's one thing in Lull where somebody's stealing, I mean, the $20, right? So Judge Keenan, in this case, I think where Daryl Blunt hid the gun used in the robbery in the jail cell, I think the fact that Detective Howard neglected to tell the magistrate about that as well as that fact that he lied about who hid the clothing. Oh, I agree with you. It's a real problem. But I'm just wondering whether we don't want to give the district court the opportunity to pass on that. I certainly think it's an option, Your Honor. And to be clear, this shouldn't matter to the legal analysis. My client has already finished serving his jail sentence. And so it wouldn't actually make a difference in that regard if you do want to remand because he's already out. But I think, if anything, the reckless disregard in because of the four omissions and because of the hiding of the gun used in the robbery, to me, that's more egregious than the $20 in buy money just because there are four of them. So I think if the court wanted to, it could find reckless disregard as a matter of law, just as Judge Duncan did in Lull. The other thing I would point out as, oh, sorry, Your Honor. There was a finding. He said that he found her entirely credible. And that's why I was asking about whether or not what recklessness means in this Frank's context. If he finds her entirely credible, then he has finding that it did not occur to her that it was going to be misleading. He said, I found her to be entirely credible that she had no intent to mislead. And if recklessness encompasses adverting to and choosing to run the risk of misleading, then I think it does answer Judge Keenan's question, which is, I think it's essential we actually know what reckless means in this context. So, Your Honor, I think that's why I don't want to say that it's gross negligence because I don't think that's what recklessness means. But it's not it's clearly not intentional intent to use a terrible phrase. I understand reckless means advert to and choose to run the risk in most circumstances. And the question is, in some tort circumstances, we let gross, gross negligence, truly gross negligence stand in as recklessness because we can't believe it would not have crossed the person's mind. And so my question is, is this a finding that it did or did not? Did it have to enter the risk, have to enter her mind or not? So I think, Your Honor, if I may offer if I may offer to get back to Lowell, because, you know, it's so rare for me to have a case that I think is on all fours, like so closely on fours with such a fact based case. There's several quotes. I'm not going to read you all of them, especially because I see my opening time is about to expire. There's a bunch of language, again, on pages. It's all between 116 and 118 of Lowell that say things like should have been obvious to invest or Welsh. And every reasonable person would know the magistrate would want to know that. There's a lot of language that whether Your Honor wants to decide that it's a gross, gross negligence standard or adverted to the risk or whatever, that's for Your Honors to decide. But all of these should have known, should have been obvious, must have known, whatever they are, I think they get to reckless disregard for misleading the magistrate, which is the standard from Franks and Lowell that, that, you know, I would say that I, on behalf of Mr. Pulley, I'm not asking for a new rule. I'm really just asking this court to enforce the rule that has already been already been. What about the district courts alter additional ruling that it wasn't material? So that's another element of a Franks. Yes, it is, Your Honor. And, and this, this is, I was about to say to Judge Keenan, if I may answer you very quickly, even though my time has expired, the district court did not address the remedy under lull, which is on page 118 of the lull decision, that when the magistrate has been misled about informant credibility, the remedy under lull, which is on page 118, is to, it's not to add the information about the informant credibility problem. The remedy under lull is to excise every piece of information from the warrant that came from the, from the informant, which in this case is Daryl Blunt. Except some of that information, that's the big distinction between lull and this. Lull was focusing on the credibility of an informant. This case was not, this case was focusing on the credibility of some evidence provided by the defendant. That evidence proved to be true. And so the real question then is you can't exclude that as a, as a prophylactic rule, because they, there was no decision that he's a credible man. She was tracing let me finish, please. There was tracing evidence in this case from various different sources, and the court was fully persuaded by the carefulness of the detective and her credibility. And it seems to me that if you put in everything in this case and not delete the whole evidence that Blunt provided, because some of it was actually true, then you have the materiality of findings the district court made. And I don't know how you get around that either. So that's the, the drug buy in lull actually happened. And so that is the argument that was made in lull that the lull court actually rejected. The pocketing of the buy money happened after the drug deal was complete. And so that does not distinguish this case from lull in any respect. Because the government in lull actually made that argument, that, that there was no reason to, to, because the, the pocketing of the buy money was after the person managed to buy the drugs from the defendant, that there was no reason to, to, that the two things were separate and the court rejected that argument. So the lull remedy is in fact to excise, excise all of the information that comes from the, from the informant whose credibility the magistrate has not had the chance to judge, because it's about protecting the, the structure, like the separation of powers role of the magistrate being the person who gets to judge informant credibility because it's the magistrate's role as a neutral arbiter that's being protected in this circumstance. Okay. Thank you. Mr. Young. Good afternoon, your honors. May it please the court. The government and the defendant disagree about two fundamental questions that color the entire case. The first is what kinds of warrants are these? And the second is, is the rule in lull as broad as the defendant suggests. And I want to start with the first question, what kinds of warrants are these? And judge Niemeyer, this gets exactly to the point you made under the totality of the circumstances test in Illinois against the gate. If someone comes to police with an incriminating piece of information, the police can do one of two things. One thing they can do is try to buttress the veracity of the accuser. And in that kind of case, the engine in the warrant that is creating probable cause is the truthfulness of the speaker. And that's what happens in most drug cases involving confidential informant. But the other thing the police can do is they can go out and they can try to corroborate the accusation wholly independent of the credibility of the person making it. And the defendant keeps trying to make this first kind of case. And it is the second kind of case. It is crystal clear. It is the second kind of case. Detective Howard was on the stand for four hours. She testified extensively before Chief Judge Davis that she thought that what was doing all of the work to create probable cause here was the phone records and the clothing. And I want to pause on the phone records, because the corroborative weight of the phone records here is enormous, because it corroborates Mr. Pulley's involvement in at least four ways, right? Way number one, Darrell Blunt receives a phone call from Craig Pulley at the exact moment he is caught on camera during robbery three. Number two, the victim in that robbery hears Darrell Blunt say, we're good in here, we're good in here, which supports the inference that Blunt was talking to an accomplice, not somebody who just happened to call him when he was committing a robbery. Three, Darrell Blunt called Craig Pulley before the fourth robbery. And four, Darrell Blunt called Craig Pulley after the fourth robbery. All of that was in the residential search warrant and all of it as extraordinarily corroborative. And that flows immediately into the second question. Is the rule in lull as broad as defense counsels suggest? And the answer is firmly no. In the government's view, there are three salient features of lull. First, the police in that case clearly thought that the controlled by alone created probable cause to search the residence. Which is why they did not make any statement about the informant's credibility in the affidavit. This court concluded that was wrong as a matter of law. There's no per se right to search a house after a controlled by. So second, that means the entire affidavit in lull turned on the veracity of the accuser. It converted the affidavit from one that relies on corroboration into one that I could ask you, what here, what information do we have here? We have the phone calls. We have the phone call during the third robbery and the phone call before and after the fourth robbery. Okay. What else do we have here that's independently verified? We also have the statement during we're good in here. Indicating that he was speaking with his accomplice. One of the things that the defendant says in his briefing is they had the same paper route and they talked all the time. But that's an independent statement from the victim. Okay. I need to ask you to, Mr. Young, I need to ask you to slow down a little bit. I don't know if it's the transmission feed, but I'm having a little bit of trouble keeping up with you. I appreciate that, Your Honor, and I will do so. The statement that what Mr. Blunt said during the robbery is we're good in here. Indicating that he was speaking to an accomplice or a co-conspirator came from the victim of that robbery. So that's also independent. And the last thing is the clothing. And I want to touch on the clothing for exactly the reason Judge Myers mentioned. The key transcript page is 487. Detective Howard testified she did not find out about what Darrell Blunt had said in his jail calls until after Mr. Blunt and Mr. Foley were both in custody, which means after she had sworn out the residential search warrant. And contrary to my friend, I think this court made quite clear in Massenburg that the collective knowledge doctrine does not apply in the search warrant context like this. What Blauvelt says is that it applies in the other direction. So if a captain says to a sergeant, go arrest that man, it's not an argument in favor of the illegality of the rest if the captain didn't tell the sergeant everything he knew. But Massenburg says we don't do the inverse when it comes to the affidavit for a warrant. And the last thing I would say, and I didn't pick up on this until my second time the record, but I think it clarifies things in a way that's very helpful. Detective Howard is the person who executed the search warrant on Darrell Blunt's call before Craig Foley was arrested. The robbers in the fourth robbery wore two different outfits. One was dressed all in black in a ski mask, and one was dressed in a safety vest with a baseball cap and a construction helmet. Police found the ski mask when Detective Howard searched Darrell Blunt's car. This is a JA-86. It's in her notes. So part of the reason she says repeatedly as she's testifying, I didn't think who discarded the clothing mattered is because what she had in hand was an outfit recovered from Mr. Blunt's car that seemed to match one of the robbers in robbery number four. And an outfit recovered from Mr. Blunt's motorcycle club that seemed to match the other robber from robbery number four. So she quite reasonably assumes that either Craig Foley threw it away himself or Craig Foley gave it to Mr. Blunt to throw away. But it never even crossed her mind that they were Mr. Blunt's own clothes. And she says under oath, in the era of DNA, it's inconceivable to me that he would have produced his own clothing in an attempt to point the finger at Mr. Foley. So on our view, the clothing also is strongly independently corroborative here. And so Judge Keenan, I want to address your concern about the firearm with an example where I think we might lose. There are some cases where the warrant affidavit rests on the notion that somebody has made a statement against penal interest when they confess to a crime. So imagine this affidavit with no independent corroboration. So now it looks like lull. And Daryl Blunt had come in and said, you know what, I'm going to give it up. I confess. I did these robberies. But so did my friend Craig Foley. And Detective Howard had left out the false statement about the gun. I might lose in that case. But the reason that I would lose is because that's an affidavit that turns on the credibility of the speaker. What the police officer is saying in that kind of case is Daryl Blunt has given it up. He's cut the nonsense. He's now cooperating. You should believe him. And if in the exact same interview he lies, obviously a reasonable person would understand that that would go towards undermining probable cause. But Judge Myers, this gets to your point about what does recklessness mean. What the court said in Miller against Prince George County is that recklessness in this context is knowledge that leaving the statement out will render the affidavit bereft of probable cause. And I agree with you. When Chief Judge Davis made his credibility finding at page 652 of the appendix, and he said, I've listened to Detective Howard testify for four hours, and she absolutely did not intend to mislead anybody, that is sufficient to conclude she wasn't reckless. And that's in part. I think that he ruled. So you're saying that Judge Davis ruled on more than just intentional disregard with regard to the defendant being in jail during robberies one and two. Because I couldn't find, it seemed to me that Judge Davis was very methodical and really did a very judicial lawyerly job of just marching through everything on intentionality and then starting with and specifically addressing reckless disregard, leaving out the information on that the defendant had been incarcerated on robberies one and two, but then kind of dropped the ball on robberies one and the rest of the information with regard to the reckless disregard analysis. And you're saying that didn't really happen because he said he believed the officer. In other words, it doesn't matter that the trial judge didn't specifically address reckless disregard with regard to the other items because he did say he found her credible. Is that pretty much your argument? Well, let me be very clear. Judge Keenan, your eagle-eyed reading of the transcript is 100% correct. That's exactly what Chief Judge Davis did. And I have a couple of responses. The first is because he doesn't find materiality, I don't think there needs to be a rebound. I think you can affirm on that basis independently. But the point that I was making in response to Judge Myers' questions is that in this kind of case, the materiality inquiry and the recklessness inquiry feed into each other in the following way. The reason Detective Howard was not being reckless is because she was absolutely convinced she was writing an affidavit based on independent corroboration, not the veracity of Daryl Blunt. And unlike in Lowell, that's not legal error. She was right about that. The strength of the corroboration evidence here is very strong. And so another way to perhaps say it, Judge Keenan, in one sentence is given the way the circuit has if it decided that this corroboration evidence wasn't strong, which I disagree with. But I think the most it could say is a good faith mistake about the strength of corroboration is not recklessness. Actually, I think we've said in several cases that recklessness requires actual knowledge, actual knowledge of the risk of misleading and disregarding it. And it seems to me that when you are totally innocent of any effort to mislead, you're not knowledgeable of a risk that you will be misleading and not paying attention to the risk. I agree completely. And I think that's an application of the definition. Okay, Mr. Young, let me ask you a question about materiality. First time I read through the briefs, this kind of flew off the page for me when I turned to Judge Davis's opinion. He seemed to be analyzing materiality in an incremental fashion rather than the materiality collectively. Does that make a difference here? I don't think it does, Your Honor. And I don't think it does because I don't think this is a case where the low remedy is appropriate. In other words, Judge Niemeyer said this a moment ago. I think on these kinds of facts, you just add all the information back in. And I want to explain why. I think my colleague, Ms. Platt, reads lull as though it says anytime, anywhere, any information bearing on credibility is left out of an affidavit, strikes everything. That is not our reading of lull. That's so for a few reasons. First, to even be in the lull sphere, there has to be no evidence of corroboration. It's not even a lull case unless there's no evidence of corroboration. And here the evidence of corroboration is extensive. The second point that I would make about lull is that if the rule in lull were as my colleague argues, lull would be a much shorter opinion. But instead what happens is that the panel in lull drops a footnote to this court's opinion in Copley where the court says in no uncertain terms that there is no Brady or Giglio obligation to disclose all expulpatory information at the warrant stage. And then what lull does is it says here are all these very specific cases, specific reasons, but it lists four of them. These officers acted in bad faith. That was the problem in lull. Okay, let me let me ask you another question. It looks like from looking at the records that the purple gun from the jail cell was turned over to Detective Howard on October 17th. Okay. And the affidavits were signed on the 20th and the 23rd of October. So I thought you told me that she didn't know about the purple gun. It looks like she had it. Pardon? The clothing. She didn't know about the jail call about the clothing. I'm sorry, this feed is not good. Let me try to switch microphones, Your Honor. Maybe that will help. Okay. It looks like she had possession of the purple gun. It was turned over to Detective Howard on October 17th and the 23rd. So it looks like she knew about the purple gun episode. Can you hear me now, Your Honor? Yes. Excellent. The clothing. I was referring to the clothing. She didn't know about the jail call involving the clothing. It looks like she did know about the purple gun. That's exactly right. That's exactly right. And that wasn't material to his credibility? I mean, he had denied participation in the robbery, and he in fact had in his possession the gun from the fourth robbery, and that that's not material to his credibility? Judge Keenan, this goes back to the opening and me picking up on Judge Niemeyer's line of questioning. If this were the kind of affidavit that depended on his corroboration, I think I might lose because of the evidence. I guess our disagreement is how much corroboration is in there in this case. It seems like really the only corroboration you've got are those phone calls, right? But I think if I can just clarify the issue, I think the issue is whether when the evidence is corroborated, she's actually relying on the evidence itself rather than the statement made by Blunt. Blunt says where the clothes are and says where the gun is. That turns out to be true information, and she finds that out. She does not rely on the fact that independently he's credible about things that are not corroborated. She doesn't rely anywhere on his credibility. She just relies on the information he provided that had been corroborated. And I'd say two things about that in response to Judge Keenan. I completely understand the court's concern. The first thing that I would say is in some ways, I think the most illuminating pages of the joint appendix are 618 through 620, because that's where Corporal Paul Fedorko, who is Detective Howard's supervisor, who reviewed the warrants, testifies. And he gets into a back and forth with Chief Judge Davis in which he says, look, Your Honor, I've been a detective in Norfolk for 12 years. We do not do search warrants like we were in a drug unit. We do not train our people that they are trying to bolster the truthfulness of the people providing information. We train our people to independently corroborate the evidence that they get. And that's the reason that Detective Fedorko says, look, Your Honor, I've been to trainings with the Commonwealth's Attorney's Office. I've been to trainings with captains and lieutenants. This distinction between warrants that rely on veracity and warrants that rely on corroboration is core to the way we approach our business. And I think that means one of two things is happening here, right? Either the entire Southeastern Virginia approaches wrong as a matter of law, or I think... So you're saying that, yeah, so you're saying, and I don't mean to cut you off, but I just want to make sure we get this in. So you're saying this warrant did not depend on his veracity at all? That's exactly what I'm saying. I think, Your Honor, if... How could it not? I mean, it's the guts of the information. I disagree. And the example that I would give, Your Honor, and the court may agree with me on this, it may not. Imagine the same facts, so they know Blunt's involved in one of the robberies, but Blunt asks for a lawyer immediately, and he never talks to police. If the next week, police got an anonymous tip in a letter that said, I know you had Daryl Blunt in custody. You should know he did the robberies with Craig Pulley. And then Detective Howard goes and looks at the phone records, and she sees that Craig Pulley calls Daryl Blunt during a robbery, a robbery where he's obviously speaking to an accomplice, and then Blunt calls him before and after the fourth robbery. I would think that's enough. And here we have the clothing on top of that. And for the reasons we've discussed, I don't think the clothing is problematic. So I think, Your Honor, I just disagree about the strength of the corroboration here. I think when... If I understand you, Mr. Young, I think what you're saying is that Mr. Blunt's credibility was never relied on because no statement he made was relied on except to the extent it led to other evidence which was verified. That is exactly what I'm saying, Your Honor. That's exactly what I'm saying. And my point is, didn't the magistrate have the right to know in assessing the quantum of evidence, whether it met the standard of probable cause, to know that Blunt was double dealing in this case? Didn't he have a right to know that? I've seen a lot of warrants in my time, an awful lot of them over the years, you know, both as a prosecutor, a defense attorney, trial judge. This warrant, or these warrants, I should say, they have all the appearance of being sanitized. Well, Kenan, let me, if I can briefly before my a couple of things. It cannot be the case that all credibility information has to go in because that would conflict with other precedent. It conflicts with Coakley. It conflicts with, for example, McKenzie-Goudé. One of the issues in that case was a witness testified there was a gun in the house. A co-conspirator gave an interview where he said there was no gun. And the police left out the fact that the co-conspirator had said that. And the defendant cried foul. And what this is, is a resolution at trial. That's kind of the inverse of this case. To the extent the argument is, but it's possible that Darrell Blunt was lying, that would be a trial argument to attack the weight of the corroboration evidence. Now, I understand the argument you're making, and I think you're right. We probably do disagree on some issues. I appreciate that, Judge. All right. Thank you, Mr. Young. Ms. Platt, you have some rebuttal? Thank you, Your Honor. If I may, a few points in response. So if I may disagree with my friend, Mr. Young. He tried to distinguish lull by saying that here the evidence was corroborated. And as I lay out in my reply brief, none of the evidence about Mr. Pulley was corroborated in the affidavit. And in footnote three of lull, nothing that's not in the warrant affidavit can be used to uphold the warrant affidavit. Again, it's footnote three of lull. In evaluating whether probable cause would have existed, this is a quote, if the omitted statements had been included, we consider only the information actually presented to the magistrate. So that's a quote, again, from footnote three of lull. I would also note that lull is not distinguishable. I think Mr. Young said that because here there's corroboration and in lull there was not. I'm quoting from page 112 of lull. Quote, before initiating the controlled by, officers searched the informant and found no contraband on his person. I'm sorry, I've done the wrong, I've corroborated some of the informant's information prior to conducting the controlled by. That's one quote. Lower on the page, it notes that during the drug buy in lull, there was actually a telephone recording device being used. So that's corroboration of the drug buy because it was being recorded at the time. So there, there was lots of corroboration of the informant's information in lull. And anyway, the fact that the informant stole the drug money still served to be information that the magistrate needed to have to himself or herself judge the informant's credibility for the reasons that I started my argument with. Again, if you look at the lull decision, this is about the structural integrity of the warrant process. The magistrate judge in a case, and it's not, Mr. Young said that I think that all information needs to be presented to the magistrate. That's not my position. My position is that when the police know that an informant has informing on the subject of the warrant, that is obviously material information that needs to be, that needs to be disclosed. And so these are, these are quotes from lull as well. The trustworthiness of the confidential informant lies at the heart of the reliability determination, and so the relevance of this information should have been obvious to Investigator Welch. I think this goes to Judge Meyer's concern about how you determine recklessness as a matter of law. If it should have been obvious to the detective, that is recklessness as a matter of law that, you know, to judge Kenan's point, the court can find as to the probable cause. No, no, no recklessness, your honor. Recklessness should have been obvious as negligence. Yes. Yes. You have to have a knowledge, actual knowledge of the risk that you might mislead and then overlook that. Well, and so if you look at the standards, you just announced exactly what Judge Meyer said. Your honor, this is a quote from lull. It's a quote from this court. And so if you, if you look at Detective Howard's testimony, she said repeatedly that she knew that, that, that Daryl Blunt had made conflicting determinations and she was choosing among them herself and that that was fine with her. So she did know that that's what she was doing. And the record is replete of her, of usurping the magistrate's role with regard to credibility. Except if you accept her explanation, she is not using Blunt's testimony substantively. She's using as the gate to evidence. And with respect to, if you have a, a informant who gives you 10 piece facts, pieces of fact, uh, and the informant is correct on four of them and lies with respect to six, basically she's saying, I went out and corroborated the four and that's all I'm using. I'm not relying on his credibility. I'm relying on the fact that I was able to get the evidence. Your Honor, that's not what she did here. That's not what she did here. She put the lies in the affidavit. She said that Pulley committed the robberies that she knew Blunt had committed. And she put in the affidavit that Pulley committed them and not that Blunt had committed them. And so meanwhile, as to the probable cause determination, the district court in this case, and the district court in this case at page 665 of the joint appendix held that the phone calls and the Facebook information alone were insufficient to be probable cause as to Mr. And I did not read the government's red brief to challenge that conclusion. I did hear Mr. Young tried to not try to, I heard him challenge it today at oral argument. I did not read the red brief to challenge that conclusion. I understand that the court can affirm anopoly on or affirm a district court on any ground, but I did not read the red brief to challenge that conclusion. It's not nearly as misleading as you suggest when she says on October 12th, 2017, Blunt Darrell was and was arrested. And so the court who the magistrate is told that the officer, the affiant believes that he is in fact the robber. In fact, he's been charged with the crime. And then below it says, after she says he's been charged, he said he didn't do it. So it's clear from context that the affiant does not believe he's innocent. But your honor, I think the fact that he hid the in the jail cell and that she did not reveal that is again, far worse than the, than the buy money in law. And it's egregious because it's, it's hiding evidence of this crime in, in, uh, in, in the jail cell. And if I may, your honor, the joint appendix site for, uh, for Benchoff's testimony about the clothing, uh, that I offered you earlier, it's joint appendix five 57 and 58. Benchoff said that he was taking notes about the jail calls and passing them on to the and Mr. Young cited Massenburg, uh, which happens to have been my case. That was a warrantless Terry stop case, not a warrant case. So, okay. Thank you. Thank you, your honors. We would ask the court to reverse. We appreciate it. Thank you. All right. At this point we would come down to Greek council and shake hands. As you know, that's the tradition of the court and we can't do that, but we do it virtually, uh, extending our greetings to you and thanking you for your process that we, uh, uh, uh, believe in. And I know you too believe in it too. Thank you very much for the arguments. We'll adjourn court signing die and, uh, uh, then get back to you. Thanks. Thank you. Thank you, your honor. This honorable court stand adjourned to sign a die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Richard Ernest Myers II